**BENJAMIN EGBERT, ads. BENJAMIN CHEW, Jun.**

---

**By** certain articles of agreement, for the sale and conveyance of a tract of land, the defendant was to pay one fourth of the purchase money, on the 25th of March, 1819, and the residue in three equal annual payments. The plaintiff, on payment of the first instalment, was to make a title, and to give a deed in fee simple, to the defendant, for the premises ; and the defendant, at the same time was to give to the plaintiff a bond and mortgage on the premises, or such other security, for the residue of the purchase money, as might be required by the plaintiff. Possession of the premises was to be delivered to the defendant, on the said 25th day of March, on receipt of the first payment, but that no transfer of title, or

possession, should take place, unless the first instalment should be in hand paid. *Held* that this is a case of dependant covenants, and as the one party was not bound to part with his land, and the title thereto, without payment, neither was the other required to pay, without, at the same time, receiving the stipulated equivalent. Neither party can maintain an action without showing performance, or what is equivalent on his part, or some valid excuse. It is not sufficient for the plaintiff, in an action brought upon the said agreement, to aver that he executed a sufficient deed, which, on the day appointed for consummating the contract, he was ready and willing to deliver to the defendant, on the payment by him of the first instalment, and securing the residue. Nor will it be sufficient for the plaintiff to allege, that on the day, &c. he went upon the premises, and attended, and remained, at the dwelling house thereon, during the usual hours of business, for the purpose of delivering the deed and possession, with the averment that the defendant did not attend upon the premises to receive the deed, &c. but wholly neglected ; for by the express, or implied, terms of the agreement, there is no designated, or proper place to deliver, or tender the deed, and consummate the bargain.

The stipulation in the articles to deliver possession to the vendee, on the 25th March, would have been fully and legally satisfied by a delivery of the deed on that day, by force of the statute, transferring uses into possession. *Rev. Laws*, 9, *sec.* 7. Actual livery of seizin, or possession, was not contemplated by the parties; nor was it necessary by the terms of the contract. The deed might have been lawfully tendered to the vendee at his own house, or place of business. If he accepted it, well and good; if he did not, he refused at his peril. Or if he absented himself, or could not be found, it should have been so averred in the declaration

———

This was an action of debt to recover the first instalment alleged to be due on certain articles of agreement for the sale and conveyance of a tract of land. It is not necessary for the understanding of the case, that the declaration should be inserted here. The defendant filed a general demurrer to the first count.

*Wall*, in support of the demurrer.

The agreement between the parties is set forth in the first count of the declaration, and it is a clear case of dependant covenant. The plaintiff cannot recover the instalment without showing a performance of the contract on his part. He must deliver the deed, or tender the deed to the defendant; 2 *John. R* 207 ; 2 *Chitty Pl.* 314, 315.

No place is designated in the agreement where the contract was to be consummated. The plaintiff, then, ought to have gone to the defendant, or his usual place of business, or residence, and have tendered the deed, and if he had refused, to have averred that in the declaration. His remaining on the premises,

with the deed, cannot be considered a performance, on his part, of the agreement. The defendant might have been prepared with the money, and the security, at his own house. .

The general averment of readiness is not sufficient.

*Saxton*, contra.

In case of the sale of real estate, it is presumed that the purchaser, for his own safety, desires to have the title examined, and conveyance prepared, by his own counsel. In a late work, it is accordingly laid down, as a settled rule, that the purchaser, and not the vendor, is bound to prepare and tender the conveyance; *Sugd.* 163. This principle is supported by ancient and modern cases; 2 *Ves. Jr.* 155; 5 *East R.* 198; 1 *Forrest Ex. R.* 61; 2 *Smith, R.* 543.

If the rule that, where two acts are to be done at the same time, and it does not appear, by the agreement, which party is to do the first act, the covenants are to be considered mutual and dependant, and if either party would enforce the contract against the other, he makes the performance of his own part of the contract a condition precedent, and must aver performance, on his part, or shew a sufficient excuse for non-performance — applies to contracts for the sale of real estate, the present case is not within it: this rule is founded on the fact that it does not appear, by the agreement, which party was to do the first act, 1 *Chitty*, 255, *and notes*. The court, in such case, resort to presumption to discover and carry out the intent of the parties. In the present case the parties have not left this matter to inference, or presumption, but have themselves declared, in their contract, who was to do the first act. By the agreement set out in the declaration, the defendant, on the day named, was to pay one-fourth of the purchase money, on the payment of which the plaintiff was to make a title and deed to the defendant for the premises; the defendant at the time giving a bond and mortgage, or other security, for the residue of the purchase money, and the plaintiff was to deliver possession of the premises on the same day, the first instalment being then to be paid; it being fully understood that no transfer of possession, or title, should take place, unless the said instalment should be in hand paid. This last clause appears to have been inserted for the purpose of making more manifest the intention of the parties; that the pay-

ment of the first instalment should be the first act to be done in executing the contract. This is not a case where, according to the language in the books, it does not appear, by the agreement, which party was to do the first act. The case cited 2 *John. R.* 208, was of that description. In that case, the first covenant was, on the part of the plaintiff, to execute and deliver to the defendant, a deed for the premises on the 1st of May, 1806, and the defendant covenanted to pay one thousand dollars on the 1st of May, 1806. If any intent could be inferred from this agreement as to the order of performing these acts, it was that the deed should be first delivered — there was nothing to indicate a contrary intent.

Rules of construction are founded on presumptions arising from the general terms of the contract; in the absence of express provisions they are intended to aid the court in discovering and carrying into effect the intention of the parties, and ought never to be applied to violate it. Wherever the intent appears, it rides over all technical words, or rules of construction. 1 *Saund.* 320 *a.*

In this case, the parties have expressed their intent that the first act to be done, should be the payment of the money; there is nothing unlawful in this. It is settled that where the money is to be paid on a certain day, and the deed to be made on a subsequent day, the delivery of the deed cannot be made a condition precedent. 1 *Chitty*, 355, *and notes;* 1 *Saund. R.* 320, *n.* 4.

It is as lawful for parties to agree that the money shall be first paid, and the deed afterwards executed, although both are to be done on the same day.

If, however, this rule of construction is applicable to our case, the averments in the declaration are sufficient to satisfy the rule, and support the action. The rule is in the alternative that the plaintiff, in his declaration, must aver performance of a condition precedent, or assign an excuse for non performance. The performance of a condition precedent, may be excused by the absence of the defendant, if his presence was necessary to enable the plaintiff to perform. 1 *Chitty*, 358; *Doug. R.* 684; 1 *Caines R.* 46; 7 *T. R.* 13.

In executing this contract, there were four simultaneous acts

to be performed; paying the first instalment, executing and delivering the deed, executing the bonds and mortgage for the remaining purchase money, and delivering possession of the premises. The last of these, is purely a local transaction. It can be performed nowhere, but on the land, and draws to it all other acts to be performed at the same time. Upon the land therefore, was the place where the contract was to be performed, and then the parties were bound to attend for the purpose. The declaration in this case avers, that on the day appointed, the plaintiff executed a deed to the defendants, for the premises, which he was ready to deliver, and attended on the premises on that day, for the purpose of delivering the deed, and also, the possession of the premises to the defendant; that the defendant on that day did not, and would not attend on the premises, to accept said deed, or receive possession of the premises, but refused so to do. This is a sufficient excuse for not tendering the deed.

In an action between these parties upon the same article of agreement, had before the Circuit Court of the United States, the declaration contained an averment of the execution, and tender of the deed. Upon the trial, the plaintiff was unable to procure the witness present at the tender, but proved by other witnesses, that he had executed the deed, and attended on the premises, upon the day named in the article, for the purpose of delivering that, and the possession of the farm, but the defendant did not appear. Judge Washington, in delivering the opinion of the court, on a motion for a nonsuit, said, that the facts proved would have been sufficient to maintain the action, if the plaintiff had averred these facts in the declaration, as an excuse for not tendering the deed, but having averred a tender, he was bound to prove it; that the variance was fatal, and on that ground ordered a nonsuit.

*Wall*, in reply. The possession of the premises would have passed by the delivery of the deed by force of our statute. *Rev. Laws* 9, *sec.* 7. As actual livery of seizen is not now necessary, a delivery of the deed of the premises, would have been a full performance of the agreement on the part of the plaintiff. For the court to establish the rule, that in agreements like this, where no place is designated, the parties must go to the

premises, to consummate the contract, would lead to endless trouble and mischief. The vendor and his wife, the acknowledging officer, and the scrivener, with the vendee and his friends, must all be there. If the premises are at a distance, the parties may not be able to reach there. As there is nothing in this agreement to require this attendance on the premises, the inference is, that the parties did not intend it, and the court will carry into effect the intention of the parties. He insisted, that the payment of the money was no more the first act to be done, than the tendering of the deed, and that the deed could be drawn by no one but the plaintiff, for he alone had a knowledge of the title, or possession of the title papers. The plaintiff was not willing to trust the defendant with the possession and title, till he was paid the first instalment and had security for the balance; and the defendant was unwilling to trust the plaintiff with the money, till he had a title for the land.

HORNBLOWER, C. J. The first count in the declaration is for the consideration money, to be paid by the defendant to the plaintiff for certain lands which the defendant had agreed to purchase of the plaintiff, and which the plaintiff was to sell and convey to the defendant. The declaration sets out the agreement with great particularity; and among other things, that the defendant was to pay one fourth of the purchase money on the 25th March, 1819, and the residue in three equal annual payments. That the plaintiff, on payment to him of the first instalment, was to make a title, and give a deed in fee simple to the defendant for the premises; that the defendant at the same time, should give to the plaintiff, a bond and a mortgage on the premises, or such other security as might be required by the plaintiff for the residue of the purchase money. That the plaintiff should deliver possession of the premises to the defendant, on the said 25th March, 1819, on receipt of the first payment, *but that no transfer of title or possession should take place, unless the first instalment should be in hand paid.* The plaintiff then avers, that on the 25th of March, 1819, he made, signed, sealed and executed a deed of bargain and sale from him to the defendant, for the premises in fee simple; and on that day was, and from thence hitherto had been, and still is ready to deliver to the de-

fendant, the said deed, together with the possession of the premises, upon the defendant paying the first instalment, and securing the residue, &c. and that in fact, he the plaintiff, on the said 25th of March, went to and upon the premises, and attended, and remained at the dwelling house thereon, that being the most notorious place on the premises, for a long time, during the usual hours of business—to wit, &c. for the purpose of delivering to the defendant, the said deed and possession, &c. : but that the defendant did not, and would not, attend upon the premises on that day to accept the deed, and receive possession; but then and there wholly neglected and refused so to do, and still doth refuse, &c. to take possession, pay the first instalment, and secure the residue, &c.: whereby an action hath accrued, &c.

It is very clear, that this is a case of dependant covenants. When the plaintiff conveyed the estate, he was to receive the first payment and security for the residue; and when the defendant parted with his money to the amount of the first instalment, and gave security for the balance, he was to receive the estate ; they were to be reciprocal and concurrent acts. Neither party intended to trust the other. The very cautious provision inserted in the article, that no transfer of title or possession was to take place, unless the first instalment should be in hand paid, did not alter the legal character of the agreement. The vendee was not bound by that clause to pay down his money, as a distinct and independent act, previous to his receipt of the deed ; they were still to be contemporaneous acts. *Goodisson* v. *Nunn*, 4 *T. R.* 761, 766 ; *Jones* v. *Barkley*, *Doug.* 650 ; *Kingston* v. *Preston*, cited in *Jones* v. *Barkley*; *Glarebrook* v. *Woodrow*, 8 *T. R.* 366; *Sugd. law of Vend.* 162, *and seq ; Rawson* v. *Johnson*, 1 *East* 203 ; *Morton* v. *Lamb*, 7 *T. R.* 125 ; *Green* v. *Reynolds*, 2 *Johns. Rep.* 207 ; 1 *Saund.* 320, *c. note* 4, and cases there cited. It is equally clear and well settled, that in the case of dependant covenants, if either party wishes to compel the other to perform the contract, or to subject him to damages, for non performance, he immediately makes his part of the covenant, precedent ; and cannot proceed against the other, without an actual performance of the agreement on his part, or a tender and refusal. This latter position, is abundantly sustained by the cases already cited.; to which I may add

*Johnson* v. *Applegate, Coxe Rep.* 233, and *Ackley* v. *Administrators of Elwell,* 5 *Halst. R.* 304, and the cases cited in a note to the former, and by the chief justice in the latter case. The only question then on these pleadings, is, whether the plaintiff has shewn such a performance on his part: or a sufficient tender and refusal; or such an excuse for not performing, or not making a tender, as entitles him to this action? He alleges, that he executed a sufficient deed, which, on the day appointed for consummating the contract, he was, and has continued to be ready and willing to deliver to the defendant, on payment by him of the first instalment, and securing the residue, " according to the form and effect of the article of agreement." This general averment of readiness, &c. the plaintiff's counsel insisted, was sufficient, and cited several cases in support of that position ; but they do not sustain him. In *Rawson* v. *Johnson,* 1 *East* 203, 212, the defendant undertook to deliver malt at, &c. upon request, &c. The plaintiff averred, that he made request, *at,* &c. (the proper place) and was then and there ready, &c. to accept and to pay, &c. ; but that the defendant refused to deliver, &c. This was not only a case after verdict, but the court considered the refusal of the defendant to deliver the malt upon request, made at the proper time and place, as relieving the plaintiff from the nugatory act of making an actual tender. The case of *Levy* v. *Herbert,* 7 *Taunt.* 312, seemed at first view to sustain the plaintiff; but it does not ; for though the court are represented as having said, that a general averment of readiness, was sufficient, and that no evidence either of an offer, or of readiness, was necessary ; the court must be presumed to have spoken in reference to the pleadings in the case, in which the plaintiff had expressly averred, not only a refusal on the part of the defendant, but that the defendant had *discharged* him from any further performance. We cannot suppose the court intended to say, it is sufficient in every case in general terms to aver readiness, and never necessary to prove either an actual offer, or even *readiness* to perform. The rules of pleading in such cases, are too well settled, to be disturbed by the case last mentioned, even if it went the length contended for. 1 *Chit. on pl.* 316, 317, *and seq. ; Morton* v. *Lamb,* 7 *T. R.* 125. But the plaintiff has not relied upon this general averment. He has gone

further, and alleged, that on the day, &c. he went upon the premises and attended and remained at the dwelling house thereon, during, &c. for the purpose of delivering the deed and possession, &c. and then avers that the defendant did not attend *upon the premises* to receive, &c. but wholly neglected, &c. The non attendance of the defendant, would, no doubt, if unexplained, have been a sufficient excuse, for not making a tender ; nay, it would in itself, have been substantially a breach of the agreement, *if* by the express or implied terms of the contract, *that* was the designated or proper place to deliver or tender the deed, and consummate the bargain. 1 *Chit. on pl.* 319 ; *Miller* v. *Drake,* 1 *Caines Rep.* 45 ; *Hotham* v. *The East India Co.* 1 *T. R.* 638. It is not, however, pretended, that any place was specifically named or designated in the articles, for the performance of the agreement ; but it is correctly argued, that if, from the nature of the case, it must be done at a particular place, and could not be done elsewhere, then the law would consider that the place for carrying the agreement into execution, as clearly as if it had been particularly named. Is there anything in this agreement then, or in the nature of the thing to be done, that requires it to be consummated on the premises, and forbids or renders it impossible to be executed elsewhere ? The counsel for the plaintiff answers this question affirmatively ; because, *possession* was to be *transferred* the same day on which the deed was to be delivered, the first payment made, and security given for the balance. He insists, it was all to be one transaction ; that *possession* could only be delivered on the land itself, and therefore, *ex natura rei,* that was the place to deliver or tender the deed. This argument, though ingenious, is not solid. The stipulation in the articles, to deliver possession to the vendee, on the 25th March, would have been fully and legally satisfied, by a delivery of the deed on that day, by force of the statute transferring uses into possession. *Rev. Laws* 9, *sec.* 7. Actual livery of seizen or possession was not contemplated by the parties ; nor was it necessary by the terms of the contract. The vendor, on the 25th of March, 1819, when the contract was to be executed, was in possession of the premises, and therefore, then capable of executing his agreement ; or he was not. If he had the possession himself, then that possession would have been

transferred to the vendee, by the delivery to him, of a deed of bargain and sale at any place. But if the plaintiff had not the possession on that day, then he was not in a situation to execute his contract, either on the premises or elsewhere. If there had been an actual tenant, holding under or adverse to the vendor, and the parties had met on the premises, could the plaintiff have performed his part of the contract, until he had first lawfully dispossessed the occupant, and obtained the actual possession himself? Certainly he could not. Until he had acquired the actual or exclusive possession of the premises, he could neither actually, or symbolically, deliver possession to the vendee. The vendee was not bound, either on, or off of the premises, to accept a deed, or to pay one cent of the money, while there was a tenant or actual occupant of the premises; nay, they would both have been trespassers, if they had gone on the premises for the purpose of forcibly turning the tenant out of possession, (even if he had been a tenant at will) and putting the vendee in : and if the tenant was a friendly one, ready and willing at any moment, at the request of the vendor, to move off and yield up the possession, it certainly was not necessary for the vendee to be on the premises. He was to receive the possession *from* the vendor, not from the tenant; and the very moment the vendor was in a situation to deliver possession to the vendee, that moment it would have passed by the delivery of the deed, wherever such delivery might have taken place. Since then, the vendor, whether on or off of the premises, must have had in himself, at the very instant he delivered the deed, such a possession as would have passed *by* the delivery of the deed, there was no necessity of being on the premises to consummate the bargain. The deed might have been lawfully tendered to the vendee at his own house, or place of business. If he accepted it, well and good ; if he did not, he refused at his peril. Again, in every contract for the sale and conveyance of land, where the contrary is not the intention of the parties, a covenant or agreement that the vendee is to have *possession*, is either expressed or implied. In many, perhaps in a majority of cases, the period when the vendee shall have possession, is expressly stated ; and where it is not, the legal intendment is, that the possession is to be given when the deed is delivered. Lands are continually advertised

Egbert ads. Chew.

and offered for sale at public or private sale, with notice, that *possession will be delivered* immediately *on delivery of the deed*, or at some other particular period; but such vendors do not understand that they thereby bind themselves to go *on* the premises, and make an *actual* livery of seizen or transfer of possession; nor do the purchasers conceive themselves obligated by such terms, to go upon the premises, to pay their money, give security, receive a deed, and take possession. If, however, *a transfer* or *delivery* of possession, means an actual and visible transaction, and can only be effected *on* the premises, as contended for by the plaintiff's counsel, then, in every case, whether the agreement to deliver possession is express or implied, if the contrary is not provided for, the parties must actually go upon the premises to consummate their bargain, however remote those premises may be, or however inconvenient to the parties. Such a decision would astonish the community; it would introduce a new principle and practice on the subject of conveyancing; it would, in a measure at least, virtually repeal the statute for transferring of uses into possession, and throw us back two or three centuries to the exploded practice of actual livery of seizen. Again, if this contract could *only* have been executed *on* the premises, the defendant must not only have gone there himself, but he must have taken with him a scrivener to prepare a bond and mortgage, " or such other security as the vendor might have required; " his wife to execute and acknowledge, and a judge, or other competent officer, to take her acknowledgement of a mortgage, and if there happened to be no house on the premises, all this must have been done in the open field! I cannot subject parties to such an inconvenience, and to so useless a ceremony, unless by their own agreement they have plainly bound themselves to submit to it. If such had been their intention, they might have done so by simply inserting the words " on the premises," and it is hardly possible to conceive, that those words, or some others, specifying *place* as well as *time*, would not have been inserted, if the *place* of performing the contract was considered material, and to constitute a part of the agreement. No place, then, being designated, either expressly or by legal implication, for the execution of the contract, the plaintiff, if he wished to entitle himself to this

action, ought to have tendered the deed and offered himself ready to perform the agreement to the defendant in person, at his residence or usual place of business, or wherever he might have been found. If he absented himself or could not be found, it should have been so averred in the declaration. My opinion is, that judgment must be entered on the demurrer for the defendant.

FORD, J. The plaintiff declares, that he agreed to make a deed for certain land to the defendant, and deliver him possession thereof, on the 25th day of March, 1819; and that the defendant covenanted in the same instrument, that he would pay him one thousand and six dollars and twenty-eight cents, part of the purchase money for said land, and also give a bond and mortgage for the residue, on the same 25th day of March; and the plaintiff avers, that he *executed* a deed for the conveyance of said land to the defendant, and attended with *it* at the dwelling house on said premises, upon the said 25th day of March, from noon until four o'clock in the afternoon of said day, then and there *ready* and *willing* to deliver said deed and possession of said land, to the defendant, on his paying one thousand and six dollars and twenty-eight cents, part of the purchase money, and giving bond and mortgage for the residue; and ever since that time, has been, and is still ready and willing so to do; but that the defendant neither did, nor would come to the said land to receive the said deed or possession, and has neglected and refused to pay the said one thousand and six dollars and twenty-eight cents, whereby an action has accrued to the plaintiff to demand and have the same. Upon a general demurrer to this count, the defendant insists, that it is wholly defective and insufficient in not averring that the deed was *tendered* to the defendant; that when covenants like these are mutual and dependant, to be performed at the *same time*, though it may be uncertain which party is to do the first act, yet if either of them sues, he must shew a performance of every thing on his part, *as far as he was able;* that in this case he was able to tender the deed; therefore it was his duty to do so; that his voluntary omission of a performable act in his power, contradicts the assertion that he was ready and willing; that the cases which have been de-

cided, are uniform in declaring that to maintain an action, the plaintiff must aver that he tendered a deed; in proof of which, he cited and relied on the case of *Green* v. *Reynolds*, 2 *Johns.* 207, and the adjudged cases therein collected.

On the other hand, the plaintiff supposes these not to be dependant covenants; he says the defendant was to do a *precedent* act; that he was to prepare the draft of such a deed from the abstracts of the title, as he was willing to accept, and tender it to the plaintiff for execution; until which was done, that the plaintiff was not bound to execute a deed, much less to tender one. Now this doctrine from Sugden on vendors, does not apply at law, unless the agreement stipulates that an abstract of the title shall be furnished to the purchaser; without which he could not prepare a draft; and not only the case of *Green* v. *Reynolds*, but a multitude of others at law, would be at once overthrown, by obliging the purchaser to prepare a draft without an abstract, where the agreement put the making of the deed simply on the seller.

But still the plaintiff denied these to be dependant covenants; he says the purchaser was to do a *precedent act* by the very terms of the agreement, expressed in this clause, " it being fully understood, that no *transfer* of possession or title, shall take place *unless the instalment be in hand paid.*" But this clause makes no variation where the *same time* is fixed for performance by both sides; it only saves the seller from *transferring* title till the money is produced, and the law says just the same as the clause; for though it requires a *tender*, it enjoins no delivery or transfer; they are quite different matters; tender is no delivery, it is only an *offer* of delivery on payment of the money; it is the legal way of evincing ability, readiness and willingness to perform. The clause does not say that no *tender* shall be made till the money is in hand; such a clause would have changed the law by agreement of parties; whereas this occasions no change; the law and the clause are one, that there need be no delivery, no real transfer of title till the money is in hand paid. Therefore this clause does not dispense with the law requiring a tender, without something more.

But tender, connected even with refusal, is not performance; it is an excuse for it and nothing more; nor is it the only ex-

cuse recognized in law, but only one out of many. The performance of a condition or covenant may be excused by the act or default of the person to whom it is to be performed. 4 *Com. Dig.* 11ℰ, *tit. Condition, L* 4. "So it shall be excused by the *absence* of the feoffee, when his presence was necessary for the performance ; as if a condition be, that he enfeoff the obligee, and the obligee having notice of the time, is *absent*." 4 *Com. Dig.* 115, *tit. Condition L,* 5. " So it shall be excused by the *obstruction* of the obligee ; as if the condition be to build an house, and the obligee, or another by his order, hinders his coming on the land, or says it shall not be built, or obstructs the performance."

Now it strikes the mind forcibly, that a tender *on the day* became impracticable, by default of the defendant himself in not going to the *land*, where, by necessary construction, all these covenants were to be performed. The defendant had bound the plaintiff to do an act *there*, on that day, which could not be performed *elsewhere ;* I mean, to deliver possession of the land; and no *place* being expressed for fulfilling the *other* covenants agreed on for the *same time*, the performance of them at the *same place* is implied in the agreement, by necessary construction and intendment; so necessary indeed, that without this construction, the plaintiff might be compelled to break one or other of his two covenants. If he had left the land to hunt abroad for the purchaser, who had the power of avoiding him, he could not aver that he remained *on the land* ready to deliver possession ; the purchaser might come, and finding nobody there, might plead it as breach of covenant ; or if he did hunt, and hunting did not find the purchaser, he could not tender the deed nor aver that he had done it. The only way to a fulfilment of all the covenants *at the same time*, leads inevitably to the construction, that they were to be performed *at the same place*. It is not only a necessary, it is likewise a fair construction ; it flows from the instrument without any force, and is the evident meaning of the parties; and the defendant cannot take advantage of his own default in not going to the place where the deed and delivery of the land were both to be made ; the very place he had covenanted to be at, in order to receive the possession, and where alone the plaintiff had any right to look for or

expect him.    His absence obstructed the tender, and thereby excused it in law ; the plaintiff did all that was in his power to do, consistently with the agreement, and it forms a legal excuse.    Baron Comyns above states it as the result of all the law, that the performance of a covenant is excused, by the *absence* of the feoffee, where his presence was necessary for the performance ; as if a covenant be, that he enfeoff the obligee, and the obligee, having notice of the time, is absent.    Here the *time* was fixed in the agreement to which he was a party.    I think the tender was therefore fully excused in law.

It was argued, that attending *on the land* was unnecessary for delivery of possession ; that a symbolical delivery by twig or turf, or key, could be made any where without going on the land ; whereas, these things delivered at another place, would constitute no actual possession ; they might all take place while a third person and his goods were in the house, or his cattle in the fields ; they would only express a *consent* that the purchaser might *take* possession if he could, as between him and the seller ; they would not put out a third person, who would have to be removed, after all, by ejectment.    A covenant that the purchaser *may take possession*, is leave or license, and nothing more ; whereas, the seller is bound by this covenant, to do more ; he is to *deliver* it, and it must be a clear possession, to the exclusion of every other person ; the same as the sheriff gives on a writ of *habere facias possessionem.*    This is not a covenant that the purchaser shall have a *right* to the possession, a right that he may sue on ; the object is not to buy a law suit, but to avoid one by having the possession itself, not symbolically, but really to occupy the house and work the land ; he may refuse the mere symbol of these things, and if the *things themselves* are not delivered to him, the covenant for delivery will be broken.    It can be performed on the land only, and nowhere else, without another covenant.    Under the present one, the plaintiff could do no more than execute the deed and have it ready on the land, the place of delivery; he could not tender it, because the defendant would not come ; by which default, the tender was legally excused.

The possession which the plaintiff covenanted to deliver, was meant by both parties, to be a substantial and beneficial one ;

that would give the purchaser a present dwelling for his family, and land for immediate cultivation ; it was not to be emblematical and figurative only. There is a kind of possession which accrues under the statute of uses, by delivery of a deed of bargain and sale ; but it is an ideal and fictitious thing, merely to give validity to the deed as an instrument of conveyance. It differs from *actual* possession as a shadow differs from the substance, or the fiction of a thing from the fact. The statute says that the bargainee of the use, shall be *deemed* to be in possession of the land. It is only a *deeming ;* whereas, in point of *fact*, another person may, at the very time, be in actual possession of the farm, and put the purchaser to the tedious and expensive measure of an ejectment to turn him out. Nothing can protect him against this evil, but a *covenant* that possession shall be *delivered* to him. Such is the undeniable difference between these two kinds of possession, and he who would have the *actual* possession must lay the seller under a covenant to deliver it ; a covenant that can be performed on the land, and nowhere else. The question is simply this, whether a special covenant under hand and seal *to deliver possession of land,* is legally performed by giving only the emblem, shadow and fiction of it, and leaving the party to get the actual possession by an ejectment whenever he can, at his own expense. It was argued, syllogistically, that either Mr. Chew had the possession, or he had not. If he had it not, he was disabled to fulfil his covenant, which disables him to sue; but if he had it, his *deed* would transfer it to Mr. Egbert. This strikes me to be a sophism. Mr. Chew, who resided in Philadelphia, might have had a tenant under him prepared and in full readiness to go out on the 25th of March, if directed then to do so ; he was therefore able to perform in law and fact. Now, suppose he should execute a deed in Pennsylvania, or twenty miles off, and when Mr. Egbert afterwards demanded the tenant to give up, he should reply, " I was ready to deliver possession on the 25th, to Mr. Chew, but he did not come to demand it, and now you must get it by legal means." Thus Mr. Egbert has received a deed of bargain and sale, and parted with all his money at another place, and may be calmly told, " the deed gives you the *shadow* of possession, you must help yourself to the *substance* as well as you

are able." This gross consequence results from the construc-
tion that a special covenant to deliver possession, means no
more than to deliver a deed.

But suppose the mere shadow and fiction of the thing should
not be a legal substitute for the thing itself, it is next argued,
that a covenant to deliver the possession of land lying in a *re-
mote* part of the same state, or in a foreign one, would be made
very burthensome, if the court should decide that it must be
performed *there* and in no other place. Now, if this argument
means what it imports, it leads to this dangerous conclusion,
that if a man, for valuable consideration, covenants to perform
a specific act, this court can rescind the contract because the
performance of it would be burthensome. I need not waste a
moment to refute such a glaring error as this. But again;
wherein does the inconvenience or burthen lie? Could not the
party constitute an attorney residing on the spot, to deliver
possession in his name? This, which could be easily done, is a
much more lawful expedient than asking the court to impair the
obligation of the contract, when they are prohibited from doing
it by the constitution of the United States. But if the party
originally intended that he would neither deliver possession
himself, because it would be burthensome for him to go to the
land, nor appoint a person residing on the spot to do it for
him, because he might have no resident acquaintance there, it
renders the matter still worse; he covenants for *valuable consid-
eration* to do an act, and at the same time intends not to perform
it. What is this but moral turpitude, fraud and deceit? And
on what ground could he ask relief in a court of justice? But
again, the form of these contracts is not usually and in practice
what the objection supposes it to be. Where the lands contract-
ed to be sold, lie in a distant place, as Ohio, Kentucky, Alaba-
ma, or the like, the vendor seldom if ever covenants to *deliver
possession;* he only covenants to give a deed and make a good
title; if any mention is made of possession, it is, that on delive-
ry of the deed, the purchaser may *take* possession; the seller
*consents* that he may then enter on the premises. But if this
leave, license, permission and authority is not satisfactory; if
the purchaser insists on having an explicit covenant that the
vendor shall *deliver him possession on a specific day*, and the cov-

enant is so drawn, I disclaim all power of setting it aside, or of turning it into a fiction. This agreement speaks of the de livery of the deed as being one thing, and the delivery of the possession of the land as being another. It declares, that until the money is in hand paid, there shall be no transfer of *title*, *nor* delivery of *possession ;* neither one nor the other ; and if we should construe these *twain* to mean only *one*, the other of the twain must be construed to mean nothing.

Another argument was advanced by the defendant, which denies the whole ground of these being dependant covenants to be performed at the *same time*, and introduces a very opposite construction, founded on this branch of the agreement, that the purchaser, for the residue of the money, should give a bond and mortgage on the premises, *or* such other security as the vendor might require ; from which he concludes, that the vendor had an option, and therefore was bound to give previous notice of the kind of security he required. If so, the giving of such notice became a condition precedently to be performed, and destroys the dependance of these covenants. It supposes that the vendor had the privilege to refuse a mortgage on the premises, by force of this covenant, and demand of the purcha ser a bond, with any personal security he chose to name, the Governor, or President of the United States. This seems to me to be a perversion of the meaning of a very plain agreement.

The purchaser covenanted to give a mortgage on the premi ses, or such other security as the seller might require ; he was to do one or the other, not both ; it was a covenant in the alter native ; and would be fulfilled if he performed either ; conse quently the option belonged to him, not to the vendor.

Here then, was a covenant to deliver actual possession of im moveable property on the 25th of March, that could be per formed nowhere but on the land itself, and the purchaser *would not* come, though the seller attended there at the time, with a deed executed and ready to be delivered. It was *not tendered*, owing to the purchaser's default, which forms a legal excuse. We cannot adjudge it otherwise, without allowing the purchaser to take advantage of his own default; and on this state of the pleadings I see no alternative but to render judg ment for the plaintiff.

RYERSON, J.   The plaintiff, in his declaration, demands the first instalment of money to be paid in and by certain articles of agreement, by and between the parties, for the sale and purchase of a tract of land.   This contract bears date the 17th October, 1818.   By it the plaintiff was to convey the land in question to the defendant, on the payment of the first instalment and securing the residue ; and to deliver to him the possession of the land on the 25th day of March, then next, the first instalment being then paid ; it being fully understood, that no transfer of possession or title should take place, unless the said instalment be in hand paid.   The defendant covenanted to pay the first instalment, on or before the 25th of March aforesaid, and to secure the residue in a manner specified in said agreement.   After setting out the agreement, the declaration avers the sealing of a good and sufficient deed on the 25th of March aforesaid, which the plaintiff was then, and ever since has been, ready and willing to deliver, on receiving payment and security according to said agreement; and that in fact, the said plaintiff, on the said day, did attend on the premises, and was there ready and willing to deliver the deed and possession of the premises; and that the defendant did not and would not, there attend to accept said deed, and receive and take possession, but neglected and refused, and still refuses, &c. and refuses to pay the said first instalment, &c.   To this declaration there is a general demurrer and joinder in demurrer.

I am inclined to think this demurrer well taken.   According to what I conceive to be now well settled law, these covenants are dependant and mutual conditions ; and if the one party was not bound to part with his land and the title thereto, without payment, neither was the other required to pay, without at the same time receiving the stipulated equivalent.   There were several things to be done by each party at the same time.   The plaintiff was to convey and deliver the possession of the land in question ; and the defendant was to pay the first instalment of the purchase money, and secure the balance thereof.   When this should have been done, the contract would have been completely executed.   And the manifest meaning of the contract is, that performance by the one, was the consideration, and what is more, was the entire consideration of what was to be done by

the other party. Neither party then can maintain an action without showing performance, or what is equivalent, on his part, or some valid excuse. *Green* v. *Reynolds,* 2 *John,* 207 ; 1 *Chitt.* 314–15 ; 1 *Saunders* by *Williams,* 320, *note* 4; *Kingston* v. *Preston,* cited in *Jones* v. *Barkley,* *Doug.* 689. The good sense and sound principle of the modern cases is, that neither party should be left to the risk and expense of a remedy by action, unless such a construction is necessary ; but should have it in his power to enforce performance, by withholding performance on his part, till the other perform. And conversely, he must show performance or tender of performance, or that the other party prevented it, or some other valid excuse, to enable him to maintain an action. Ancient technicality seems now disregarded ; courts look more to the intent of the parties, and the order of time in which justice requires them to act, in settling questions whether covenants are independent, conditions precedent, or mutual conditions. Nor does the strong and explicit language, used to show that the plaintiff was not to part with his land till he got his money, change, (as the plaintiff's counsel supposed) the construction of this agreement. It is only saying in terms, what the law would have implied.

On the part of the plaintiff, it was insisted, that the defendant was to do the first act; that it was his duty to prepare and pay for the draft of the deed, and tender it to the vendor to be executed ; that unless this was previously done, it was not necessary for the plaintiff to take any step. In support of this position a number of cases were cited. Although this may be necessary in some cases, to enable the vendee to support an action, or to maintain a bill in equity, it only proves that any party who would maintain an action, must first do all in his power to execute the contract; and cannot establish that the vendor, who has contracted to convey, need not convey or tender a conveyance, before he can recover that for which the conveyance was the stipulated consideration. But I am inclined to think, that in no case in New Jersey, unless in pursuance of an express agreement, is it necessary for the vendee to prepare a draft of the conveyance. A reason may exist for it in the extremely subtle and complicated system of conveyancing practised in England, which has no application to

our very simple forms. But even in England, the first act is to be done, I believe, by the vendor, in preparing and exhibiting a brief of his title, although it should be the duty of the vendee to draft the conveyance thereupon necessary.

It was further said in behalf of the plaintiff, that an averment of readiness to perform, is sufficient on his part. To this I cannot assent, unless it be also averred that the defendant had notice thereof and refused expressly to pay, or did some other act, to show that it was useless for the plaintiff to attempt to proceed further on his part. The authorities do not support the doctrine contended for. But so far from this appearing, the contrary is manifest from the declaration. The parties were not together on the day that these mutual acts were to have been done. That they were not, is not shown to have arisen from any default of the defendant, unless as I shall presently notice. This brings me to the consideration of the last and main point, as would appear, upon which the plaintiff relied; that is, that these covenants were, by the agreement, to have been executed at a particular place, and that the plaintiff was at that place, ready and desirous to do every thing on his part; but that the defendant did not, and would not there attend. No place is named *expressly* in the contract. But it was said to be implied, from the local character of one act, the delivery of possession, which would draw to itself all other acts to be done at the same time. I do not mean to question the truth of the proposition, that where an act is to be done, necessarily in a particular place, all that the party need do, is to show himself ready at that place. But was the delivery of possession, so far set forth as to satisfy this agreement, necessary to be done on the premises? Would not the delivery of a deed of bargain and sale, (our most usual conveyance) when it is not alleged that there was any person in the actual possession, whom it was necessary to remove, have answered the purpose? That is, if the plaintiff was, as he avers, ready and able to perform, on his part, would not the delivery of the deed, immediately have transferred the possession? It so appears to me. Nothing further need be done by the vendor, to give complete possession; and the only positive act required, if any be required, is the simple act of entry by the vendee. I believe the clause about

Budd *v.* Railroad and Transportation Company.

delivery of possession, is a very common one in similar agreements; and yet I have never heard before that it was necessary, or known any attempt, formally to enter on the premises, to perform the various acts required in such contracts. Nor is any authority cited in support of this position. If it be law, it is strange that the point does not appear in the books. That it does not, I think we may take for granted, from the known diligence, and the multitude of authorities cited by the plaintiff's counsel on other points. We were, indeed, referred to a circuit opinion, said to have been delivered by Judge Washington, but at a time when the point was not actually before him. That he gave *such* an opinion is denied by the adverse counsel; and we have no means of ascertaining what was said. As at present advised, I think it will be time enough to require the parties to enter upon the lands, to perform their agreements for the sale thereof, including delivery of possession, when they shall so expressly agree; or the vendee shall require the vendor to go on the premises, to deliver possession; or it shall be shown from some other cause, that it was necessary to go on the premises to deliver the possession. It was incumbent on the vendor, if he meant to enforce this contract against an unwilling party, to have sought him out, if to be found by reasonable enquiry, and then to offer to perform his part to the party, personally. Not having done this, or shown a valid excuse, he has no right now to require performance of the other party.

I am therefore of opinion that judgment must be given for the defendant.

Judgment for defendant.

CITED in *Biddle* v. *Coryell*, 3 *Harr.* 379; *Shinn* v. *Roberts*, *Spencer*, 444; *Vreeland* v. *Beekman*, 7 *Vr.* 14.